# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| SEIFULLAH A. ALI, | * |
| Plaintiff, | * |
| v. | *   Civil Action No. 8:16-cv-186 |
| PRINCE GEORGE'S COUNTY; MARY LOU MCDONOUGH; CORENNE LABBE; W. STEPHAN SIMMONS; AMANDA WELCH | * * * |
| Defendants. | * |

## MEMORANDUM OPINION AND ORDER

Plaintiff Seifullah A. Ali alleges that while he was incarcerated at Prince George's County Detention Center ("PGCDC"), he was denied the ability to exercise his religion. ECF No. 60 ("Am. Compl.") ¶ 1. Plaintiff names Prince George's County ("the County"), along with PGCDC employees Mary Lou McDonough, Corenne Labbe, W. Stephan Simmons and Amanda Welch (the "Individual Defendants"), in their official and individual capacities, as defendants. Pending is Defendants' Motion to Dismiss, ECF No. 72.[1] For the reasons discussed below, Defendants' Motion to Dismiss is granted in part and denied in part. The claims against the Individual Defendants in their individual capacities are dismissed. The case will proceed against the Individual Defendants in their official capacities and the County. Defendants' request to dismiss Plaintiff's claims for punitive damages is denied.

---

[1] The parties fully briefed the motion. *See* ECF Nos. 72, 73, 74. A hearing is not necessary. *See* Loc. R. 105.6.

**Background**

Plaintiff was incarcerated at PGCDC between December 2014 and April 2016 while awaiting trial and sentencing for criminal charges in the Prince George's County Circuit Court. Am. Compl. ¶ 21. Mary Lou McDonough is the Warden and Director of PGCDC; Corenne Labbe is the Deputy Director and head of the Bureau of Administration of PGCDC; W. Stephan Simmons is the Chief of the Program Services Division of PGCDC; and Amanda Welch is the Chief of the Inmate Services Section of PGCDC. *Id.* at ¶¶ 7–10. Plaintiff claims the County and the Individual Defendants prohibited him and other Muslim inmates from exercising their religion at PGCDC.[2]

Specifically, Plaintiff allegedly sought permission to congregate for group prayers and to engage in study groups. *Id.* at ¶¶ 25–31. Plaintiff claims that he was told it was the policy of PGCDC to prohibit Muslim inmates from congregating for prayers or study group unless a volunteer imam from outside PGCDC was present to lead the services but that "no one from the volunteer community had volunteered to perform these services at the Detention Center." *Id.* at ¶ 28. Plaintiff says that he volunteered to help PGCDC seek out imams from the local community that would be willing to visit PGCDC, but his requests were denied. *Id.* at ¶ 30. In addition to prayer services, Plaintiff alleges he and other Muslim inmates were denied special meals for holidays. *Id.* at ¶ 32. Plaintiff claims he was told that it was not the policy of the PGCDC to

---

[2] On August 7, 2017, I granted in part and denied in part a motion to dismiss or in the alternative a motion for summary judgement filed by Defendants and dismissed all of Mr. Ali's claims except his religious exercise claim. ECF Nos. 32, 33. I also ordered service to be completed on PGCDC chaplains Romero and Penn regarding his religious exercise claim. *Id.* Once served, Chaplain Romero and Chaplain Penn filed separate Motions to Dismiss. ECF Nos. 37, 44. The Clerk of the Court informed Mr. Ali that he had seventeen days to respond to each, or the claims could be dismissed without further notice. ECF Nos. 41, 45. Mr. Ali filed a response only to Mr. Romero's motion. ECF No. 43. Because Mr. Ali's allegations failed to state a claim for which relief may be granted as to Chaplains Romero and Penn, his complaint was dismissed as to both Chaplains. ECF Nos. 48, 49. I appointed pro bono counsel for Mr. Ali and granted him leave to file a second amended complaint. *Id.* The present amended complaint and pending motion to dismiss followed.

2

provide special meals to Muslim inmates. *Id*. Plaintiff maintains that other correctional institutions in Maryland allow congregation for prayer services and provide special meals for religious holidays. *Id.* at ¶ 35.

Plaintiff further alleges Defendants provided programs, services and opportunities to Christian inmates, but "failed to undertake reasonable efforts to bring Muslim religious volunteers to the Detention Center." *Id.* at ¶ 34. PGCDC contracted with a ministry to bring religious officials to perform Christian services and programs. *Id.* at ¶ 40. Christian inmates were permitted to congregate for religious services and engage in Bible study groups even when a religious official was not present. *Id.* at ¶ 41–42. They are also given special meals during Christmas and Easter. *Id.* at ¶ 43.

Plaintiff asserts that "[a]ll of these policies, practices, and customs were formulated, designed, and implemented by and under the supervision of" the Individual Defendants, and that the Individual Defendants were "acting on behalf of Prince George's County." *Id.* at ¶¶ 44, 50.

Count I of Plaintiff's complaint alleges a violation of the Religious Land Use and Institutionalized Persons Act against Defendant Prince George's County and the Individual Defendants in their official capacities. *Id.* at ¶¶ 51–59. Count II alleges a violation of 42 U.S.C. § 1983 and the Free Exercise Clause of the First Amendment against Defendant Prince George's County and the Individual Defendants in their official and individual capacities. *Id.* at ¶¶ 60–68. Count III alleges a violation of 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth Amendment against Defendant Prince George's County and the Individual Defendants in their official and individual capacities. *Id.* at ¶¶ 69–77. Plaintiff seeks compensatory, nominal, punitive, and other money damages. *Id.* at ¶ 78.

Defendants filed a motion to dismiss, contending that the official capacity claims should be dismissed in each count, the individual capacity claims should be dismissed in Counts II and III, and that the Individual Defendants are entitled to qualified immunity as to Counts II and III. ECF No. 72 at 2. Defendants also argue that Plaintiff's punitive damages claims must be dismissed. ECF No. 74 at 6.

## Standard of Review

Plaintiff's claims are subject to dismissal if they "fail[] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Rule 12(b)(6)'s purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). The well pleaded facts as alleged in Plaintiff's complaint are accepted as true. *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011). Factual allegations are construed "in the light most favorable to [the] plaintiff." *Adcock v. Freightliner LLC*, 550 F.3d 369, 374 (4th Cir. 2008) (quoting *Battlefield Builders, Inc. v. Swango*, 743 F.2d 1060, 1062 (4th Cir. 1984)).

## Discussion

### Individual Capacity Claims

Defendants move to dismiss the § 1983 individual capacity claims in Counts II and III against the Individual Defendants. ECF No. 72. Section 1983 provides liability for "[e]very

person who, under color of [state law], subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. "'Although § 1983 must be read against the background of tort liability that makes a man responsible for the natural consequences of his actions, liability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiffs' rights.'" *Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (citation, alteration, and internal quotation marks omitted in original). "The doctrine of *respondeat superior* has no application under this section." *Id.* Rather, § 1983 "require[s] proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation"). *Id.* (citing and quoting *Swint v. City of Wadley*, 51 F.3d 988, 999 (11th Cir. 1995)).

For example, § 1983 liability based on personal involvement was found for a prison director and sheriff where the defendants "played key roles" in ensuring that the plaintiff remained in solitary confinement by "seeking and recommending approval by the Governor." *Williamson v. Stirling*, 912 F.3d 154, 172–73 (4th Cir. 2018). In contrast, civil rights claims against a sheriff stemming from a foreclosure action were dismissed where the plaintiff failed to allege any specific facts regarding the sheriff's personal involvement. *Proctor v. Wells Fargo Bank, N.A.*, 289 F. Supp. 3d 676, 690–91 (D. Md. 2018).

Here, Plaintiff fails to adequately plead personal involvement of the Individual Defendants. Plaintiff repeatedly alleges that his requests for accommodation were communicated to and denied by Defendants' agents, "including Chaplain James Penn, Chaplain Filiberto Romero, Lieutenant Dixon, and various correctional officers in his housing units, including Corporals Montgomery, Dudley, Wallace, Hawkins, and Mothershead." Am. Compl. ¶ 27; *see also id.* at ¶¶ 28–33. In

fact, Plaintiff does not allege *any* specific action or omission taken by the Individual Defendants. Therefore Plaintiff has not adequately plead facts to allow a reasonable inference of liability against the Individual Defendants based on their personal involvement.

Plaintiff cites *Cranford v. Frick* to support his claim that a supervisor is liable for his own "affirmative misconduct" as a basis for personal liability. No. 05-00062, 2007 WL 676687, at *6 (M.D.N.C. Feb. 28, 2007). While that proposition is true, this case does not advance Plaintiff's argument. In *Cranford*, the plaintiff alleged that the supervisor, a sheriff, was directly involved with the alleged deprivation of plaintiff's rights by authorizing an unlawful search and seizure performed by his subordinate officers. *Id.* at *4. Here Plaintiff does not plead any affirmative conduct by the Individual Defendants, except the conclusory allegation that the Individual Defendants were responsible for "formulating, designing, implementing, and enforcing the policies" in question and for the actions of their agents that resulted in his injuries. Am. Compl. ¶¶ 44–50. Unlike in *Cranford*, these allegations are not sufficient for the Court to reasonably infer affirmative misconduct of the Individual Defendants as a basis for personal involvement.

However, there is a limited exception for supervisory liability based on the actions of subordinates. "Such liability is not based on ordinary principles of *respondeat superior,* but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter,* 737 F.2d 368, 372 (4th Cir.1984). "[L]iability ultimately is determined 'by pinpointing the persons in the decision-making chain whose deliberate indifference permitted the constitutional abuses to continue unchecked.'" *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir.1994)

6

(quoting *Slakan*, 737 F.2d at 376). To establish supervisory liability, a plaintiff must demonstrate three factors articulated in *Shaw v. Stroud*:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices'; and (3) that there was an 'affirmative causal link' between the supervisors inaction and the particular constitutional injury suffered by the plaintiff.

*Randall v. Prince George's Cty., Md.*, 302 F.3d 188, 206 (4th Cir. 2002) (quoting *Shaw v. Stroud*, 13 F.3d at 799 (internal quotation marks omitted); *see also Lewis v. Bishop*, No. PWG-18-3616, 2019 WL 4038558, at *7 (D. Md. Aug. 27, 2019) (listing factors).

With respect to the first prong, a plaintiff must show: "(1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff." *Shaw*, 13 F.3d at 799. "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Id.* "Because supervisors 'cannot be expected to promulgate rules and procedures covering every conceivable occurrence,' and because they may be powerless to prevent deliberate unlawful acts by subordinates, the courts have appropriately required proof of multiple instances of misconduct before permitting supervisory liability to attach." *Randall v. Prince George's Cty., Md.*, 302 F.3d at 207 (quoting *Slakan*, 737 F.2d at 373).

For the second prong, "[d]eliberate indifference . . . may be satisfied by showing '[a] supervisor's continued inaction in the face of documented widespread abuses.'" *Randall v. Prince George's Cty., Md.*, 302 F.3d at 206 (quoting *Shaw*, 13 F.3d at 799). "Deliberate indifference is a

7

very high standard—a showing of mere negligence will not meet it." *Mikkelsen v. DeWitt*, 141 F. App'x 88, 91–92 (4th Cir. 2005) (quoting *Grayson v. Peed,* 195 F.3d 692, 695 (4th Cir.1999)). "'[D]eliberate indifference describes a state of mind more blameworthy than negligence' but 'is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Baynard v. Malone*, 268 F.3d at 236 (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)).

As to the third prong, "proof of causation may be direct . . . where the policy commands the injury of which the plaintiff complains . . . [or] may be supplied by [the] tort principle that holds a person liable for the natural consequences of his actions." *Shaw*, 13 F.3d at 791 (quoting *Slakan*, 737 F.2d at 376) (alterations in original).

For example, in *Shaw*, the Fourth Circuit affirmed a denial of summary judgment where a supervisor was aware of at least three reports of violent tendencies by a subordinate officer but failed to take any action to prevent constitutional abuse. 13 F.3d at 800. And in *Slakan*, the Fourth Circuit affirmed a jury verdict finding supervisory liability where high-pressure water hoses were used against an inmate housed in a one-man cell. 737 F.2d at 376. In that case, the Court noted that two of the supervisors had direct knowledge that high-pressure water hoses were used in similar situations on at least seven occasions and the third indisputably knew that it was used as a routine control measure. *Id.* at 374–76.

Likewise, in *Baynard v. Malone*, the Fourth Circuit affirmed the denial of a motion for judgment as a matter of law, holding that a reasonable jury could find supervisory liability of a school principal based on findings that (1) the supervisor had actual or constructive knowledge of conduct that posed a pervasive and unreasonable risk of constitutional injury where the principal was informed on multiple occasions that a teacher abused a student and had inappropriate contact

with students; and (2) ignoring these mounting warnings amounted to deliberate indifference. 268 F.3d at 235–36.

In contrast, in *Randall v. Prince George's County, Maryland*, the Fourth Circuit vacated a jury verdict and held that there was no supervisory liability where the plaintiffs had not established a pattern of prior abuses that would demonstrate the supervisors had actual or constructive knowledge that their subordinates were engaged in conduct that posed a "pervasive and unreasonable risk" of constitutional injury." 302 F.3d 188, 206–07 (4th Cir. 2002). While there was evidence of a standard practice not to release a witness until a lead investigator or supervisor reviewed a witness's statement, the plaintiffs failed to establish that it was customary to unconstitutionally detain a witness without probable cause after they expressed a desire to leave. *Id.* The Court also rejected a theory that the abuses were so "widespread and pervasive" that the supervisors must have known because that "contradicts the premise of supervisory liability, i.e., that the failure to supervise contributed to the constitutional deprivation in question." *Id.* at 207. *See also Thompson v. Commonwealth of Virginia*, 878 F.3d 89, 111 (4th Cir. 2017) (affirming summary judgment dismissal of supervisory liability allegations where plaintiff "only makes conclusory allegations without any specific facts that these defendants had knowledge that retaliation was taking place and that they acquiesced in the retaliatory acts.").

Similar claims have also been found to be insufficient at the pleadings stage. In *Moore v. Greenwood Sch. Dist. No. 52*, the Fourth Circuit affirmed the dismissal of supervisory liability claims on a motion to dismiss where the plaintiff alleged a single incident of a supervisor upholding and ratifying a subordinate's allegedly retaliatory action not to renew an employment contract. 195 F. App'x 140, 144 (4th Cir. 2006). Likewise, in *Jones v. Shanahan* this Court dismissed with prejudice individual capacity claims against a Chief of Police where the complaint was "totally

bereft of any facts by which the court could infer [the Police Chief's] involvement" and a proposed amendment to the complaint that the arrest was completed with the Police Chief's "knowledge, direction, delegation and authorization" would be futile as a conclusory allegation. No. PX-18-01678, 2019 WL 2341375, at *2, *3 n.3 (D. Md. June 3, 2019). And in *Smith v. Wright*, this Court granted a motion to dismiss individual capacity claims, finding that the defendant's receipt of an administrative grievance form regarding an alleged incident was insufficient to establish personal knowledge and liability. No. PWG-13-2258, 2014 WL 4094898 (D. Md. Aug. 18, 2014).

Here, Plaintiff fails to adequately plead supervisory liability for the Individual Defendants. At the first prong of the *Shaw* analysis, Plaintiff fails to plead sufficient facts that indicate that Individual Defendants had actual or constructive knowledge that their subordinates were "engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury." Plaintiff alleges that Individual Defendants' agents were "speaking on behalf of Defendants" when they communicated that it was the policy of PGCDC to prohibit Muslim inmates from congregating for group prayers and religious services unless an outside volunteer imam was present. Am. Compl. ¶ 28. And after detailing the ways in which the Individual Defendants' agents denied his requests, the complaint summarizes that "*Defendants* denied Plaintiff's request to congregate with other Muslims for religious purposes." *Id.* at ¶ 34. These are conclusory allegations with respect to the Individual Defendants, and are insufficient to state a claim. *See Iqbal*, 556 U.S. at 678–79 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). At best, Plaintiff alleges that he sent "at least one written request to Defendants seeking permission to hold congregational Jumm'a prayer services" and that the Individual Defendants' agent denied the request. This is not enough for the Court to draw a reasonable inference that the Individual Defendants had actual or constructive knowledge that their

10

subordinates were "engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury." *Shaw*, 13 F.3d at 799; *cf. Moore v. Greenwood Sch. Dist. No. 52*, 195 F. App'x at 144 (affirming dismissal of supervisory liability claim on motion to dismiss where plaintiff alleged single incident of supervisor upholding and ratifying allegedly unconstitutional action); *Smith v. Wright*, No. PWG-13-2258, 2014 WL 4094898 (D. Md. Aug. 18, 2014) (granting motion to dismiss finding that defendant's receipt of single administrative grievance form regarding alleged incident insufficient to establish personal knowledge and liability.)

Plaintiff's supervisory liability claims against the Individual Defendants also fail at the second prong of the *Shaw* analysis, as Plaintiff does not adequately plead facts for the Court to reasonably infer that the Individual Defendants were deliberately indifferent to his claims. Plaintiff did not plead any facts for the Court to reasonably infer the Individual Defendants had states of mind sufficient to constitute mere negligence, let alone that of deliberate indifference to his claims. *See Mikkelsen v. DeWitt*, 141 F. App'x 88, at 91–92. Again, there were no specific facts as to the acts or omissions of the Individual Defendants at all.

Plaintiff cites two unpublished out-of-circuit district court cases to support his argument for supervisory liability. But these cases support Defendants. In *Bishop v. Jesson*, the plaintiff, a practicing Jew, alleged supervisory liability against three defendants regarding his claims of inadequate Kosher food. No. SER-14-1898, 2016 WL 8674584, at *14 (D. Minn. Feb. 12, 2016), *report and recommendation adopted*, No. ADM-14-1898, 2016 WL 906422 (D. Minn. Mar. 9, 2016). The court dismissed the claims against two of the supervisors because the plaintiff only asserted generally that they "implemented, retained and carried out a policy or de facto standing practice of serving inedible, improper and inadequate kosher meals and non-kosher meals as kosher meals, by the inclusion of non-kosher foods and provision[ ] or service in a non-kosher

11

manner." *Id.* Other than this and other general allegations, Plaintiff failed to allege "any facts specific to [the individual defendants] that demonstrate their direct involvement, failure to train, or failure to supervise that has caused the alleged deprivation of constitutional rights.") *Id.* In contrast, the motion to dismiss the claims against the third supervisory defendant was denied, because the plaintiff alleged that the inadequacy of the Kosher food was specifically brought to the defendant's attention and the defendant allowed it to continue. *Id.* at *15. Similarly, in *Williams v. Johnston*, the court denied the dismissal of First Amendment freedom of association claims against three supervisors at the Minnesota Sex Offender Program facility where plaintiff was committed. No. DFW-14-369, 2015 WL 1333991, at *5 (D. Minn. Jan. 28, 2015), *report and recommendation adopted*, No. FLN-14-369, 2015 WL 1334015 (D. Minn. Mar. 25, 2015). There the court found that the plaintiff made specific allegations of wrongdoing against the supervisors, including that they individually denied and upheld the denial of plaintiff's visitation rights. *Id.* Here, the allegations are like those against the two supervisors that were dismissed in *Bishop* and unlike the allegations against the remaining supervisor in *Bishop* and the supervisors in *Williams*. Like the claims against the dismissed supervisors in *Bishop*, Plaintiff only makes general allegations that the Individual Defendants were responsible for and implemented the relevant policies and fails to allege any facts specific to the Individual Defendants.

Nonetheless, Plaintiff has adequately pled allegations against the County and the Individual Defendants in their official capacities. Indeed, this point is not contested. As described, Plaintiff alleges generally that the Individual Defendants were responsible for "formulating, designing, implementing, and enforcing the policies" that deprived him of his rights and for the actions of their agents that resulted in his alleged injuries. Am. Compl. ¶¶ 44–50. To the extent these statements are more than conclusory allegations, they provide a basis for municipal liability, not

supervisory liability of the Individual Defendants in their individual capacities. *See Mikkelsen v. DeWitt*, 141 F. App'x 88 at 90–91 ("[Plaintiff's] contention that [individual defendant] is a 'policy maker' does not quite capture the relevant issue here. Debating whether a public employer has adopted an unconstitutional 'custom' or 'policy' is a question to be asked when examining the basis for *municipal* liability under § 1983. . . . It is not the right question to ask when confronting a supervisor's potential liability in his individual capacity.") (internal citation omitted, emphasis in original).

Accordingly, the claims against the Individual Defendants in their individual capacities are dismissed.[3] Because Plaintiff has twice amended his complaint and this is the third decision regarding the sufficiency of the pleadings, this dismissal is with prejudice.

### Official Capacity Claims

Plaintiff also sues the Individual Defendants in their official capacities. Defendants move to dismiss these claims, arguing that they can be consolidated with the claims against the County. It is well established that government entities are the real parties of interest in official capacity suits against local government officers. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."); *Huggins v. Prince George's Cty., Md.*, 683 F.3d 525, 532 (4th Cir. 2012) (A suit against a county official in his official capacity "serve[s] as [a] suit[ ] against the County.")

However, it is also well established that the Plaintiff is the "master of his complaint and has the option of naming only those parties the plaintiff chooses to sue . . . ." *Lincoln Prop. Co.*

---

[3] Individual Defendants also claim qualified immunity. But because Plaintiff has not adequately pled claims against the Individual Defendants, I do not reach this issue.

*v. Roche*, 546 U.S. 81, 91 (2005) (quoting 16 J. Moore et al., Moore's Federal Practice § 107.14[2][c] (3d ed. 2005)); *see also Electro Source, LLC v. Nyko Techs., Inc.*, No. DT-01-10825, 2002 WL 34536682, at *8 (C.D. Cal. Apr. 15, 2002) ("Plaintiff is the master of the complaint and is entitled to name any defendant against which there is a valid cause of action . . . ."). Suits under RLUIPA and § 1983 can be properly brought against individuals in their official capacities. *See, e.g.*, *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014) (RLUIPA official capacity suit); *Lovelace v. Lee*, 472 F.3d 174 (4th Cir. 2006) (§ 1983 official capacity suit).

In *Carter v. Myers*, the Court considered a similar request to substitute the relevant county as the defendant for individuals sued in their official capacities. No. HMH-15-2583, 2017 WL 3498878, at *5 (D.S.C. Aug. 15, 2017). The court denied the request, recognizing that suits against the individuals in their official capacities was the same as a suit against the county, because "formal substitution is not required." *Id.* In contrast, in *Snowden v. Prince George's County Department of Corrections*, this Court dismissed official capacity claims against individual defendants in favor of a suit against the county. No. PJM-18-160, 2018 WL 3862253, at *3 (D. Md. Aug. 14, 2018). There the Court found that doing so would "streamline discovery" and plaintiffs identified "no prevailing need" to keep the individual official capacity defendants in the case. *Id.*

Here, Plaintiff opposes the request, and Defendants do not argue that dismissing the official capacity defendants will streamline discovery or otherwise preserve the parties' or judicial resources. Indeed, Plaintiff represents that he will be seeking discovery from the Individual Defendants. ECF No. 73 at 6–7. Given that (1) Plaintiff can choose to name the Individual Defendants in their official capacities in his complaint, (2) substitution with the County is not required, and (3) Defendant has not offered any countervailing reason to dismiss the official capacity claims, Defendants' request to do so is denied.

Punitive Damages

Plaintiff is seeking "nominal, compensatory, punitive, and other money damages." Am. Comp. ¶ 78. Defendants concede that *Wilcox v. Brown*, 877 F.3d 161 (4th Cir. 2017) allows Plaintiff to seek monetary damages. ECF No. 74 at 6. However, Defendant argues that Plaintiff has failed to sufficiently allege punitive damages. *Id.*

A jury may consider punitive damages in § 1983 actions when there is "reckless or callous disregard for the plaintiff's rights, as well as intentional violations of federal law" or conduct motivated by evil intent. *Smith v. Wade*, 461 U.S. 30, 51 (1983); *see also Cooper v. Dyke*, 814 F.2d 941, 948 (4th Cir. 1987). Here, Plaintiff asserts that he is entitled to punitive damages because his requests for religious accommodation were repeatedly denied while Christian inmates were afforded similar privileges and that Defendants acted with malice in their "purposeful discrimination." Am. Compl. ¶ 74. These allegations are enough to plead claims for punitive damages as the Court can draw the reasonable inference that Plaintiff may be able to establish "reckless or callous disregard" or evil intent after completing discovery. And should he fail to do so, the Defendants will have an opportunity to raise this in a motion for summary judgment once discovery has concluded. Therefore, Defendants' request to dismiss the claims for punitive damages is denied.

Conclusion

In sum, Defendants' Motion to Dismiss is granted in part and denied in part. Specifically, the claims against the Individual Defendants in their individual capacities are dismissed. The claims against the Individual Defendants in their official capacities and against Prince George's County may move forward, including claims for punitive damages.

**ORDER**

For the reasons stated in this Memorandum Opinion, it is, this 13th day of December, 2019, hereby ORDERED that Defendants' Motion to Dismiss, ECF No. 72, is GRANTED IN PART and DENIED IN PART as follows:

1. Defendants' request to dismiss the individual capacity claims against the Individual Defendants is GRANTED. These claims are DISMISSED with PREJUDICE.

2. Defendants' request to dismiss the official capacity claims against the Individual Defendants is DENIED.

3. Defendants' request to dismiss all claims for punitive damages is DENIED.

4. Defendants shall file an ANSWER within 30 days of the date of this Order. A conference call with the Parties then will be scheduled to discuss further proceedings in this case.

/S/
Paul W. Grimm
United States District Judge